UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| FAIRPAY SOLUTIONS INC. | CIVIL ACTION NO. 10-1494 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| WILLIS KNIGHTON MEDICAL CENTER, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is Defendants' Motions to Dismiss or Abstain. (Record Documents 21, 22, 24, 30, 31, 34, 62). Defendants have raised multiple challenges to the case at bar, from improper service to a 12(b)(6) failure to state a claim for which relief can be granted. After a review of the motions and Plaintiff FairPay Solutions Inc.'s ("FairPay") opposition, the Court finds that FairPay's claims requesting this Court to interpret the Louisiana Workers' Compensation scheme of compensation are inappropriate for this forum. Therefore, the Court abstains under the Burford abstention doctrine. Further, FairPay's Eighth Amendment challenge, Fourteenth Amendment challenge, and unjust enrichment claim are all properly dismissed under Rule 12(b)(6).

Accordingly, the Court Defendants' Motions to Dismiss (Record Documents 21, 22, 24, 30, 31, 34, 62) are **GRANTED**.

## BACKGROUND

FairPay "provides medical bill review services to entities responsible for paying workers' compensation medical bills, including Louisiana employers, their insurers, third party administrators, and managed care organizations." (Record Document 7 at 2). FairPay

1

"reviews medical provider's billed charges and recommends an amount to reimburse to such providers" as prescribed the Louisiana Workers' Compensation Act and corresponding Louisiana Administrative Code ("LWCA").[1] See Id.

FairPay asserts that in order to aid the calculation of workers' compensation payments to medical providers, the Louisiana Workers' Compensation Commission ("Commission") issues a payment schedule for inpatient hospital and psychiatric care services, as well as professional services. This payment schedule aides companies like FairPay and their customers determine how much they owe medical providers for medical services. However, there is a "gap" in the LWCA in regards to outpatient and ambulatory surgical center services. Unlike inpatient hospital, psychiatric care or professional services, the Commission does not create a payment schedule for outpatient and ambulatory surgical center services. (Record Document 7 at 3).

Due to this gap, FairPay and its customers do not have much guidance on what amounts to pay for outpatient and ambulatory surgical center services. This exposes FairPay to a substantial amount of risk, because if they underpay medical providers, they are subject a maximum penalty of $2,000, which is routinely assessed. (Record Document 7 at 3). FairPay argues that each of the Defendants in this case, who are all medical providers, exploit this "regulatory gap." The Defendants, through a reading of the LWCA contrary to FairPay's, file claims with the Louisiana Workers' Compensation Courts alleging that FairPay's customers underpaid for medical services. Defendants seek penalties and attorneys fees or make demands based on the threat of such litigation. (Record Document

---

[1] The Court will refer to the LWCA throughout this opinion. Such references are meant to include all corresponding administrative provisions.

7 at 4).

Due to the contracts FairPay has with its customers, it must "assume (and fund) the legal defense of a challenge to a recommended reduction." Some even require FairPay to contractually indemnify their customers. (Record Document 7 at 17). Defendants began bringing these actions in late 2009 and FairPay estimates that there are some four hundred cases pending. (Record Document 7 at 15). These cases are routinely brought before a specialized court, the Louisiana Workers' Compensation Court, who hear these underpayment claims pursuant to Louisiana statutes and administrative rules. See Id. It appears that the Louisiana Workers' Compensation Courts have agreed with Defendants interpretation of the LWCA and not FairPay's. Recently, these courts awarded penalties and fees that were roughly twice the actual damages awarded. (Record Document 7 at 17). FairPay asserts that "[b]ecause of Defendants' interpretation and the Workers' Compensation Courts' application of [the LWCA], FairPay is forced to incur significant costs both in defense of these meritless actions and in payment of amounts incurred in connection with adverse judgments where its contractual obligations so require, including attorneys fees and penalties." (Record Document 7 at 17). FairPay ultimately asserts that the Defendants' reading of the statute is incorrect and that the statute is, in fact, federally unconstitutional. (Record Document 7 at 4).

## CLAIMS FOR RELIEF

FairPay has brought six claims for relief before this Court: (i) a permanent injunction against all Defendants; (ii) an Eighth Amendment challenge to Section 2507 of Title 40, Chapter 25 of the Louisiana Administrative Code; (iii) a Fourteenth Amendment Due Process challenge to the "regulatory scheme currently in place in the Louisiana Workers'

Compensation System;" (iv) a declaratory judgment defining terms of the LWCA; (v) declaratory judgment regarding FairPay's interpretation of the LWCA; and (vi) unjust enrichment.

## LAW AND ANALYSIS

FairPay brings before this Court three claims that require an abstention analysis. Those three claims, Counts One, Four and Five, consist of a permanent injunction and two declaratory judgments. Further, in Counts Two and Three, FairPay has brought two claims under the United States Constitution. Finally Count Six is a claim for unjust enrichment.

### Counts One, Four and Five

Defendants claim that this Court should abstain from hearing FairPay's claims under either the Younger abstention doctrine or the Burford abstention doctrine. FairPay, in Count One, requests this Court to permanently enjoin the Defendants,

> "decreeing that the Defendants...be restrained from seeking any additional monetary payments for medical claims when those additional monetary payments are based on the applicability of Title 40, Chapter 25, Section 2507 of the Louisiana Administrative Code; from seeking any relief for alleged under payments of medical claims based on any regulations that are in contravention of La. R.S. 23:1034.2(A) and La. R.S. 23:1034.2(C)(1), and from seeking any fines or penalties or attorneys feed from FairPay or its customers for alleged violations of La. R.S. 23:1203(A) and La. R.S. 23:1203(B) if said fines or penalties are based on alleged underpayment of medical claims."

(Record Document 7 at 19). FairPay, in Count Four, requests this Court to declare the meaning of "covered charges" as forth in Title 40, Chapter 25, Section 2507 of the Louisiana Administrative Code and finally, in Count Five, to declare FairPay's methodology under the LWCA reasonable under the relevant Louisiana Law.

Two key points are apparent from a plain reading of FairPay's complaint. First is that while FairPay drafts its complaint as though the injury it is enduring comes from Defendants, the true injury to FairPay is the Defendants' success with a Louisiana administrative system, namely the specialized Louisiana Workers' Compensation Courts established pursuant to state statutes. Therefore, when FairPay asks this Court to enjoin the Defendants from bringing an action before a Louisiana administrative agency, it is no different than asking this Court to enjoin the agency from hearing such a case. Any plaintiff requesting to enjoin a defendant from bringing an action to a state-created court is tantamount to shutting the doors of the state court to that defendant.

FairPay alleges that Defendants have brought an interpretation of the Louisiana administrative code to a Louisiana administrative agency and have procured multiple judgments in their favor. FairPay further alleges that Defendants' interpretation causes them irreparable injury. This is clearly not the case. What causes FairPay and its customers monetary costs is the fact that the administrative agency, the Louisiana Workers' Compensation Courts, agree with the Defendants and enter judgments in their favor. Without the aid of Louisiana's administrative agency, Defendants' opinions on the relevant statutes and codes would cause no harm to FairPay or its customers.

The second key point is that FairPay, in requesting two declaratory judgments, is asking this Court to determine the meaning of Louisiana law. Further, Faiplay is making this request while admitting that Louisiana's Workers' Compensation Courts have already ruled on this issue and found the Defendants' interpretation to be correct. Due to the nature of FairPay's claims that request this Court to make a finding directly against a Louisiana administrative agency's interpretation of Louisiana law, it becomes readily apparently that

5

the principles of abstention must be addressed.

To begin, it is clear that even though the Supreme Court has set out multiple areas in which abstention is appropriate, abstention is "the exception and not the rule." New Orleans Public Service Inc., v. Counsel of the City of New Orleans, 491 US 350, 359 (1989). The Supreme Court has "described the federal courts' obligation to adjudicate claims within their jurisdiction as virtually unflagging." See Id. However, "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'" Younger v. Harris, 401 U.S. 37, 45 (1971). The Supreme Court has "not limited the application of the abstention doctrines to suits for injunctive relief, but [has] also required federal courts to decline to exercise jurisdiction over certain classes of declaratory judgments." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 718, (1996).

In regards to Defendants' Younger arguments, Younger typically applies to an ongoing state court proceeding. Texas Ass'n of Bus. v. Earle, 388 F.3d 515, 519 (5th Cir. 2004). Younger also is useful when the Court's opinion would be merely advisory. Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 12 n.9 (1987). FairPay has properly worded its complaint so that it is not seeking to directly enjoin a particular state court action but rather a legal theory that is often brought by Defendants to Louisiana state courts. Further, while this Court's declaratory judgment on Louisiana law may be only advisory, its permanent injunction to the Defendants would not be advisory. Therefore, Younger is not a proper abstention theory for this case.

The second abstention doctrine raised by Defendants is the Burford abstention doctrine. The Supreme Court explained this doctrine as follows:

6

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

New Orleans Public Service Inc., v. Counsel of the City of New Orleans, 491 US 350, 361 (1989); see also Crear v. JP Morgan Chase Bank N.A., 2011 WL 1129574, *2 (5th Cir. 2011); Wilson v. Valley Electric Membership Corp., 8 F.3d 311, 314 (5th Cir. 1993)

The Fifth Circuit has listed five factors to considered for Burford to apply:

> (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.

Moore v. State Farm Fire and Cas. Co., 556 F.3d 264, 272 (5th Cir. 2009). Finally, "Burford abstention is available when a federal court is sitting in equity; it is not available in an action seeking only damages." Jumonville v. Hercules, Inc., 2010 WL 4386478, *1 (M.D. La. 2010).

As a threshold issue, FairPay asserts that there is no "state-court review" for constitutional challenges to the LWCA and therefore Burford abstention is not a proper theory for this case. (Record Document 72 at 25-26). FairPay cites Albe v. Louisiana Workers' Compensation Corp., 700 So.2d 824 (La. 1997) for the proposition that the Louisiana Workers' Compensation Courts lack jurisdiction over constitutional claims made

against the LWCA. FairPay is correct that Albe does stand for that proposition;[2] however, this argument fails for two reasons: first, FairPay shows no reason why constitutional challenges cannot be brought in a Louisiana state district court of general jurisdiction for state court review; second, the three claims addressed in this section do not implicate constitutional issues. FairPay's request for an injunction and two declaratory judgments do not amount to a constitutional challenges but rather interpretations of state law. Reading FairPay's complaint, Count One's claim is a request for a permanent injunction so as to prevent the Defendants from violating the LWCA. (Record Document 7 at 18). Count Four requests this Court to interpret the LWCA a certain way, not to declare that it is unconstitutional. (Record Document 7 at 20). Count Five is a request to declare that FairPay's interpretation of the LWCA is correct. (Record Document 7 at 21). None of these implicate constitutional questions like Counts Two and Three. Therefore, it is clear there is at least a "timely and adequate state court review" available in Louisiana District Courts for these three claims, and, seemingly, the same appears to be available from the specialized Louisiana Workers' Compensation Court system.

In Wilson v. Valley Elec. Membership Corp., 8 F. 3d 311 (5th Cir. 1993), the Fifth Circuit gave a detailed analysis of the five factors under Burford. In Wilson, customers of electric cooperatives sought refunds of rate increases retroactively from a change in the law. The District Court abstained from ruling on the case pending the outcome of a Louisiana State Court proceeding. In affirming the District Court, the Fifth Circuit held: (i)

---

[2]The holding of Albe was as follows: "We therefore explicitly hold that hearing officers of the Office of Workers' Compensation Administration lack subject matter jurisdiction to determine constitutional issues." Albe v. Louisiana Workers' Compensation Corp., 700 So.2d at 829.

8

the claims were exclusively state law issues; (ii) the problem was of a local nature; (iii) Louisiana exercising their police powers was a very important state interest; and (iv and v) Louisiana had a large need for coherent policy in the area of electric rates shown through the establishment of a special forum. See Id at 314-316.

Now addressing how the five factors apply to the case at hand, the Court examines them individually.

(i) Federal or State Basis of Claim

While this case as a whole does contain federal issues, the three claims addressed in this portion of the Court's opinion are a permanent injunction under the Louisiana Code of Civil Procedure pertaining the to the LWCA, a declaratory judgment interpreting a portion of the LWCA, and finally a declaratory judgment regarding FairPay's interpretation of the LWCA. All three of these claims arise under, and pertain to, Louisiana state law. A judgment, regardless of the outcome, would rest on the application of Louisiana law.

(ii) Inquiry into Unsettled Issues of State Law or into Local Facts

In Wilson, the issue of electricity rates was "reasonably settled," but the Fifth Circuit still found that the District Court had not abused its discretion because the issue of giving a change in state law retroactive effect was of great local concern. Unlike Wilson, it is clear the areas of LWCA at issue are considered unsettled, according to FairPay. While it appears that Louisiana Workers' Compensation Courts have made determinations based on the pertinent portions of the LWCA, this does not necessarily mean the law is "reasonably settled." Neither party has cited a single Louisiana state court opinion construing the contested portions of the LWCA. Therefore, in interpreting the portions of the LWCA at issue, this Court would create issues of law that are not settled. Such

9

interpretations would amount to nothing more than an analysis of how a Louisiana court might rule. This factor clearly demonstrates that a Louisiana court of general jurisdiction would be the more appropriate forum to determine, as a next step, the scope and meaning of Louisiana law in this particular instance.

(iii) The Importance of the State Interest Involved

For this factor, Wilson weighed the importance of the state interest to hear the case against the federal interest to hear the case. At bar, the importance of Louisiana's Workers' Compensation system is uncontroverted. Louisiana has created a detailed, intricate administrative system to hear and adjudicate workers' compensation issues. Louisiana has implemented the Louisiana Workers' Compensation Committee to oversee this system. It is clear by a simple reading of the LWCA that Louisiana has shown a substantial interest in the establishment and operation of Lousiana's workers' compensation system. Weighing this state interest against any possible federal interest, FairPay has not pointed out to this Court how these injunctions or declaratory judgments would impact the federal system. The Court notes that there are constitutional claims made, but as stated above, these three claims do not involve constitutional challenges. Therefore, the interest of the state of Louisiana in this matter vastly outweighs any federal interest.

(iv) The State's Need for Coherent Policy

Wilson, on this issue, found that "Louisiana has a need for coherent policy in this area. *Burford* abstention is intended to avoid recurring and confusing federal intervention in an ongoing state scheme." Wilson, 8 F.3d at 315. In the Louisiana Workers' Compensation system, if this Court were to issue a judgment interpreting the LWCA that ruling would do nothing but interfere with an ongoing state scheme. This Court's analysis

10

of how a Louisiana state court might rule on these issues has the potential to lead to great confusion in this highly intricate regulatory scheme. Wilson also noted that due to the fact the issue before the Federal Court was a "long-running seesaw battle," federal intervention would be inappropriate. See Id. This is the case here as well. As FairPay has noted, there are hundreds of cases before the Louisiana Workers' Compensation Courts. For this Court to intervene and issue an opinion contrary to their prior rulings would be inappropriate and potentially chaotic for the Louisiana Workers' Compensation system.

(v) The Presence of a Special State Forum for Judicial Review

Due to the posture of this case, this consideration is not a simple one. As Defendants point out in their collective motions to dismiss, there are serious issues of standing in this matter that this Court does not address due to the Burford analysis. FairPay is not, and cannot, be a party to Louisiana Workers' Compensation cases and admits this to be true. (Record Document 72 at 17). In Wilson, the fact that primary jurisdiction for the claims at issue rests in special forums carries great weight. The primary jurisdiction for this equitable relief is either a Louisiana state court or the Louisiana Workers' Compensation Courts. However, simply because FairPay has postured this case in a way that may allow them to avoid this fifth factor is not dispositive on the issue of abstention. FairPay asks this Court to interpret portions of the LWCA. FairPay, in Counts One, Four and Five, has not asked this Court to declare portions of the LWCA unconstitutional. A proper party, i.e., an actual medical provider or one of FairPay's customers, seeking to have portions of the LWCA interpreted would begin this process in the Louisiana Workers' Compensation Courts.

Therefore, while it is true that FairPay does not have access to the special state

11

forum, this does not change the fact that the issues before this Court have a place before this special forum. Accordingly, this Court finds that there is a special forum available for a proper party to seek an injunction against the Defendants and for a proper party to seek reversal or modification of existing interpretations of the LWCA. The fact that FairPay is not a proper party does not alter the outcome of this factor, but, rather, strengthens the case for abstention. More than anything, it simply sheds light on the precarious posture of FairPay in this action.

All five of these factors strongly favor this Court abstaining from these three causes of action. In Burford, the Supreme Court stated:

> Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here. Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand.

Burford, 319 U.S. at 333-334. The same policy concerns of Burford are present in these three claims. Sound respect for the state of Louisiana and its Louisiana Workers' Compensation scheme require that this Court abstain from ruling on Counts One, Four and Five.

The final issue to deal with in the abstention analysis is whether to stay, dismiss or remand these claims. The Supreme Court has held "that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing

12

the suit or remanding it to state court." Quackenbush, 517 U.S. at 721.

It has been made abundantly clear that FairPay is not a party to a single state court or administrative agency action in Louisiana. For this reason, a stay on this action would be meaningless and the stay would necessarily be indefinite. This Court, in the exercise of its discretion, sees dismissal of these three claims as the most just and appropriate manner in which to dispose of them. Therefore, Counts One, Four and Five are dismissed as this Court abstains from reaching a judgment on the merits.

### Counts Two and Three

The next two claims to be addressed are FairPay's two federal constitutional claims. In Count Two is FairPay's claim that Section 2507 of Title 40, Chapter 25 of the Louisiana Administrative Code and the imposition of fees under the LWCA violates the Eighth Amendment of the United States Constitution "by imposing excessive fines on FairPay." (Record Document 7 at 19). Count Three is FairPay's claim that "the statutory and regulatory scheme currently in place in the Louisiana Workers' Compensation system, as interpreted by Defendants and enforced by the Workers' Compensation courts, violates the Due Process Clause of the Fourteenth Amendment." (Record Document 7 at 19).

Addressing first the Eighth Amendment challenge, the Supreme Court has held, "we now decide only that [the Excessive Fines Clause of the Eighth Amendment] does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded." Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal Inc., 492 U.S. 257, 264 (1989). FairPay is not subject to any fine from the local, state or federal government nor does FairPay assert that they have to pay any amount of money to the government.

13

FairPay's only exposure to any monetary penalty comes from indemnity contracts it wilfully entered into with its customers. Since FairPay has neither plead that it has been fined by the government, or forced to pay a fine to the government, it has no cause of action under the Excessive Fines Clause and dismissal under Rule 12(b)(6) is appropriate.[3]

As for the Fourteenth Amendment challenge, FairPay alleges that its injury derives from Defendants' interpretation of the LWCA as enforced by the Louisiana Workers' Compensation Courts. For this reason, FairPay asks this Court to declare that the LWCA and its scheme are unconstitutional, specifically La. R.S. 23:1203(A) and (B) and La. R.S. 23:1201. These three sections of the LWCA set out the obligations of the employers, how to make payments under this scheme and the result of a failure to timely pay.

FairPay does not have standing to assert this challenge. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), sets out that standing requires: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury in fact would be redressed by a favorable decision. As Defendants state in their Motion to Dismiss, "FairPay, as a non-payor, cannot be sued in workers' compensation court, and thus cannot be subject to the fines, penalties or attorneys fees under La. R.S. 23:1201." (Record Document 21-1 at 18). The only injury that FairPay incurs in these worker compensation cases arise under a contract FairPay voluntarily entered into with its customers. Their "injury" arises out of a contract that they signed with private entities. The risk of an adverse interpretation under workers' compensation law with respect to their

---

[3] See also Broussard v. Parish of Orleans, 318 F.3d 644, 652 (5th Cir. 2003) where the Fifth Circuit noted that "the Supreme Court has never directly applied the Excessive Fines Clause of the Eighth Amendment to the several states."

customers is a commercial risk undertaken by FairPay under their various contracts with private entities. "Generally, 'nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.' " Piotrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995). For these reasons, FairPay has no "injury-in-fact" caused by a state actor and cannot bring this action under the Due Process Clause of the Fourteenth Amendment. This claim is dismissed as FairPay has failed to state a cause of action for which relief can be granted.

### Count Six

The final claim FairPay brings before this Court is that the Defendants are unjustly enriched by collecting the fines awarded them by the Louisiana Workers' Compensation Courts. Under Louisiana Civil Code article 2298, "to succeed on an unjust enrichment claim, the plaintiff must show: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law, i.e., the action is subsidiary or corrective in nature." Louisiana Workers' Compensation Corp. v. The Hartford, 616 F.Supp.2d 608, 610 (M.D. La. 2008). FairPay cannot succeed on this claim for two reasons. First, FairPay is not impoverished by any party to this suit. Rather, it is impoverished by its customers' claims for indemnification pursuant to contract. Second, an unjust enrichment must occur without justification or cause. The enrichment of the Defendants is only made possible through the judgments of Louisiana Workers' Compensation Courts. A state court ordering FairPay's customers to compensate the Defendants is a prime example of sufficient legal cause to make this enrichment appropriate. Moreover, a valid imposition of penalties and fines by a Louisiana Workers'

Compensation Court provide Defendants sufficient legal justification to receive these fines. FairPay cannot satisfy the necessary factors in order to prevail in an unjust enrichment claim. Therefore, it is clear that FairPay has not stated a claim for which relief can be granted and therefore a dismissal under 12(b)(6) is necessary.

## CONCLUSION

For the abovementioned reasons, in regards to Counts One, Four and Five of the complaint, the Court finds that it is inappropriate to hear this matter under the <u>Burford</u> abstention doctrine. Counts Two, Three and Six are properly dismissed under Rule 12(b)(6).

Accordingly,

**IT IS ORDERED** that Defendants Motions To Dismiss or Abstain (Record Documents 21, 22, 24, 30, 31, 34, 62) be **GRANTED**. The Clerk of Court is directed to close this case.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 19th day of October, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE